In re the Marriage of Lynn E. HAVERSTOCK, Appellant–Petitioner,

v.

Jo Ann HAVERSTOCK, Appellee–Respondent.

No. 37A03–9204–CV–97.

Court of Appeals of Indiana, Third District.

Sept. 28, 1992.

Rehearing Denied Dec. 2, 1992.

---

Steven W. Handlon, Handlon & Handlon, Portage, for appellant-petitioner.

Edward P. Dumas, Dumas & Moriarty, Rensselaer, for appellee-respondent.

HOFFMAN, Judge.

Lynn E. Haverstock (Father) appeals from a judgment of the trial court modifying his child support payment from $61.00 to $260.00 per week.

The marriage of Father and Jo Ann Haverstock (Mother) produced a child, Eric, born on October 18, 1977. Father and Mother divorced in October of 1978, and Mother received custody of Eric while Father was ordered to pay $52.00 per week in child support. On May 3, 1982, Father's support obligation was modified to $61.00 per week. Mother filed a petition to modify the support payment and a petition for contempt on January 22, 1991. The court held an evidentiary hearing on the petitions on August 20 and 23, 1991, and entered its findings of fact and conclusions of law on December 17, 1991. The court found Father in contempt and modified his support obligation to $260.00 per week. This appeal ensued.

Father raises three issues for review on appeal:

(1) whether the evidence at the hearing rebutted the presumptive guideline amount of child support;

(2) whether the trial court erred in computing Father's support obligation; and

(3) whether the trial court erred in making its modification of child support retroactive to January 25, 1991.

Father filed a request for findings of fact and conclusions of law as permitted by Ind.Trial Rule 52(A); therefore, this Court cannot affirm the trial court's judgment on any ground which the evidence might support. Rather, we must first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Searcy v. Searcy* (1991), Ind.App., 583 N.E.2d 1216, 1220. If the findings support the judgment and are not clearly erroneous, we will affirm the judgment of the trial court. *Id.*

■ Ind.Child Support Rule 2 provides a rebuttable presumption that the guideline amount is the correct amount of child support to be awarded. Father argues that the evidence at the hearing rebutted the presumptive guideline amount because the evidence showed that Eric's weekly living expenses were less than half the guideline amount. However, the figures upon which Father relies do not include any of the costs associated with maintaining, insuring, or paying taxes on a house or car. Contrary to Father's assertion, the mere fact that Mother has no mortgage or car loan payments does not mean she has no expenses associated with the upkeep of her home and car.[1] The evidence at the hearing did not rebut the presumptive guideline amount of child support.

■ Next, Father contends that, even if the evidence at the hearing did not rebut the guideline amount, the trial court erred in computing his support obligation. Modification of a support order, pursuant to IND.CODE § 31–1–11.5–17 (1992 Supp.), involves a factual determination that substantial and continuing changed circumstances render the existing terms unreasonable. *Searcy* at 1223. This type of factual determination is committed to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion. *Id.* at 1224. When confronted

with a petition to modify a support order, the trial court must consider the totality of the circumstances involved in order to ascertain whether a modification is warranted. *Id.* The financial resources of both custodial and noncustodial parents are relevant in child support modification determinations and should be included in the totality of circumstances to be considered when an award is made. *Id.*

■ First, Father alleges that the trial court erred in failing to consider Mother's investment income of $97.00 per week when computing support under the guidelines.[2] He is correct. The court's findings of fact and conclusions of law disclose that the court considered only the amount of money Mother could be earning as a trained dental assistant, her previous job, and did not include the investment income. If the court had included the investment income, Mother's weekly gross income would have been $497.00 rather than $400.00. The court abused its discretion in failing to include Mother's investment income in her weekly gross income.

■ Next, Father claims the trial court erred in failing to deduct from his weekly gross income the cost of rearing the child of his second marriage. In support of his claim, Father cites Ind.Child Support Guideline 3(C)(2) which states as follows:

"Where a spouse has a legal support duty for other children, not by court order, an amount reasonably necessary for such support shall be deducted from weekly gross income to arrive at weekly available income. These deductions are not allowed for step-children."

Although the non-binding commentary to Child Supp.G. 3(C) establishes a "first in time, first in right" rule to be applied for purposes of this deduction, such a rule goes against the clear language of Child Supp.G. 3(C)(2) and harkens back to the archaic doctrine of primogeniture. Parents have the same duty to support later children as they do earlier children, and this

---

1. Mother's father paid for her home and car.

2. Mother's 1990 income tax return shows that she recieved $5,039.00 in investment income which breaks down to $97.00 per week.

Court will not prefer first children over subsequent children for purposes of child support. This equality of support does not deprive a first child of enjoying the same standard of living he would have enjoyed had his parents' marriage not been dissolved. *See* IND.CODE § 31–1–11.5–12(a)(2) (1992 Supp.). If his parents had stayed married and had more children, the first child's standard of living would be the same as if his parents had divorced and had children in second marriages. The trial court erred in failing to deduct from Father's weekly gross income the cost of rearing his second child.

■ Father also contends that the trial court erred in including in his income the income of his present wife. Specifically, Father contends that the court included rental income from property his second wife alone owns. However, as Mother notes, the only evidence Father relies upon in support of his contention comes from his deposition which, based on his objection at the modification hearing, the court did not admit into evidence.[3] The court did order publication of the deposition, a prerequisite to its becoming a part of the record (*see Harper v. Kampschaefer* (1990), Ind.App., 549 N.E.2d 1067, 1069 n. 1); however, in a bench or jury trial, a deposition must be admitted into evidence for the court or jury to consider it. Although Father argues that there was no other evidence regarding ownership of the rental property in question, the 1989 joint tax return of Father and his present wife indicates that Father received all the rental income from the property. Considering that the trial court allocated only half of the rental income to Father, the court's inclusion of rental income did not constitute an abuse of discretion.

■ Father further maintains that the trial court erred in including in his income profit-sharing contributions made to his retirement plan. In support of his position, Father relies upon Child Supp.G. 3(A)(2) which states in pertinent part:

"Weekly Gross Income from self-employment, operation of a business, rent, and royalties is defined as gross receipts minus ordinary and necessary expenses. Specifically excluded from ordinary and necessary expenses for purposes of these Guidelines are depreciation, investment tax credits, or any other business expense determined by the Court to be inappropriate for determining weekly gross income for purposes of calculating child support. In general, these types of income and expenses from self-employment or operation of a business should be carefully reviewed. In most cases, this amount will differ from a determination of business income for tax purposes."

As Father notes, contributions to a profit-sharing plan are not specifically excluded from the ordinary and necessary expenses of self-employed persons; however, the court found that the 1989/90 corporate tax return for Father's funeral home business showed compensation from a profit-sharing plan in the amount of $21,103.00. Father did not explain whether the plan covered employees as well as officers or whether he could terminate the plan at will; therefore, there was no evidence to contradict the trial court's finding. The trial court did not abuse its discretion by including the profit-sharing contributions in Father's income.

■ Lastly, Father claims the evidence in the record did not support the trial court's computation of his income. Over Father's objections at the hearing, the court admitted into evidence Father's corporate tax returns for 1987/88 and 1989/90 and the joint returns of Father and his present wife for 1987–1990. In its findings of fact and conclusions of law, the court took the amount of wages for Father and his present wife from their 1990 return and added the profit-sharing contribution from the 1989/90 corporate return to determine total compensation. The court then determined from the 1989/90 corporate return that Father's percentage of compensation

---

3. Mother's counsel read parts of Father's deposition into the record at the modification hearing, but the parts did not concern the rental property.

was 94% and allocated that amount of the total to Father. To that figure, the court added rental and partnership income for 1990 along with commissions in order to obtain Father's annual gross income.

Specifically, Father claims that, due to Mother's failure to ask, there was no direct evidence of his present income. However, this Court does not find the method employed by the trial court to constitute an abuse of discretion. The record supports the trial court's computation of Father's income.

As his final allegation of error, Father asserts that the trial court erred in making its modification of child support retroactive to January 25, 1991. While a court may not retroactively reduce, modify, or vacate a support order, it is empowered to make a discretionary modification relating back to the filing date of the petition to modify. *Donegan v. Donegan* (1992), Ind., 586 N.E.2d 844, 846. Here, the court selected an effective modification date 3 days subsequent to the filing of the petition to modify. However, Father argues that Mother intentionally delayed the modification hearing by requesting continuances and is receiving a windfall as a result.

The record shows that Mother moved to continue the February 20, 1991 hearing date because Father had filed a request for discovery on February 8 and discovery was not complete. Both parties agreed to the next continuance, and *Father* moved for the third continuance. The parties also agreed to the fourth and final continuance; therefore, Father has failed to show dilatory tactics on Mother's part or an abuse of discretion on the trial court's part.

Remanded to the trial court to adjust the support payment in accordance with Mother's increased income and Father's decreased income; affirmed in all other respects.

STATON and BUCHANAN, JJ., concur.