Stephen J. BEARDSLEY, Appellant
(Respondent Below),

v.

Deborah Beardsley HEAZLITT, Appellee
(Petitioner Below).

No. 88A04–9411–CV–469.

Court of Appeals of Indiana.

Aug. 29, 1995.

Rehearing Denied Oct. 24, 1995.

James R. West, New Albany, for appellant.

John A. Kraft, Young, Lind, Endres & Kraft, New Albany, for appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Stephen J. Beardsley appeals the trial court's denial of his petition to modify child support. We affirm.

will. Thus, the trial court's judgment is supported by evidence in the record.

## ISSUE

Whether the trial court erred in denying Beardsley's petition to modify child support.

## FACTS

Stephen J. Beardsley and Deborah S. Heazlitt were married in 1968. During the course of their marriage, they had four children—Elisabeth, Elisha, Hannegan, and Scarlett. Beardsley and Heazlitt's marriage was dissolved in 1988. Their dissolution decree included the following pertinent provisions:

> IT IS FURTHER ORDERED ... that the petitioner, Deborah S. Beardsley, be granted the care and custody of the four minor children....

> IT IS FURTHER ORDERED ... [that the respondent] Stephen J. Beardsley pay the sum of TWO HUNDRED FIFTY DOLLARS ($250.00) each week for the care, education and support of the four minor children of the parties....

> In the event any child of the parties elects to attend a college or university after completion of high school, the respondent shall pay an amount equal to the cost of tuition, books, fees and board in a state supported college or university located in the state of Indiana, at the year such child attends, and upon payment of said sum, the weekly support payment of the respondent shall be reduced by one-fourth with respect to any such child attending a college or university.

> The respondent shall be responsible for payment of any medical, doctor, dental, orthodontia, or optometric expenses, incurred by any child of the parties, if such expenses are not covered by and paid by the medical insurance carrier for the children under any policy carried by the petitioner....

> IT IS FURTHER ORDERED ... that the petitioner, Deborah, be awarded as her absolute property the residential real estate in which she now lives with the children of the parties (that real estate having been identified by the parties on the record as the 1209 East Main Street property).... The petitioner, Deborah, shall be responsible for paying the first mortgage indebtedness on the real estate at 1209 East Main Street ... The respondent, Stephen, shall be responsible for payment of the second mortgage indebtedness owed on the residential real estate known as 1209 East Main Street [Mutual Trust Bank Mortgage] which is now occupied by the petitioner and the children....

> IT IS FURTHER ORDERED ... that the respondent, Stephen, be awarded as his absolute property all of his interest in the business entity known as Historic Properties Limited, including all real estate and other property owned in the name of, or held by, such business entity at any place, including the City of New Albany, Indiana; and, the respondent, Stephen, is further awarded as his absolute property the vacant lots adjacent to the real estate owned by Historic Properties Limited in New Albany....

(R. 2–4).

In 1990, custody of Elisabeth was transferred from Heazlitt to Beardsley, and Beardsley's child support obligation was reduced to $190.00 per week for the three children remaining in Heazlitt's custody. In 1992, Beardsley and Heazlitt jointly moved the court for a modification of certain provisions in their dissolution decree. The trial court's *agreed* order of modification provided in pertinent part as follows:

> 1. The Respondent [Stephen] shall continue to be responsible for the payment of the mortgage indebtedness owing to First National Bank of Indiana (formerly Mutual Trust Bank) up to and including all payments due up to April 10, 1992; thereafter the Petitioner [Deborah] shall be responsible for the payment of the balance due on said mortgage indebtedness in a sum of approximately fourteen thousand dollars ($14,000.00).

> 2. Commencing April 10, 1992, and continuing each week thereafter until July 16, 1994, the Respondent shall pay the Petitioner the sum of two hundred and forty dollars (240.00) each week ... for the support of the three ... children in the care, custody, and control of the Petitioner; commencing July 16, 1994, and continuing

thereafter until further Order of Court, the Respondent shall pay the Petitioner the sum of one hundred and ninety dollars ($190.00) per week for the three ... children in the custody of the Petitioner.... [1] (R. 11–12).

On November 15, 1993, Beardsley filed a Petition for Modification alleging a "substantial and continuing change in the circumstances affecting the expenses of the children and the income of the parties...." (R. 14). On July 29, 1994, the trial court issued the following order:

Petition for Modification denied. Finding of contempt and arrearages found as a result of the 7 January 1994 hearing are now reaffirmed. Respondent to have support arrearage, including recently submitted medicals, paid within 120 days. Respondent shall pay Petitioner's attorney fee which was ordered on that date immediately if that has not already been done.

If this order is complied with in full as of the above date, each party shall pay the remainder of attorney fees incurred in their behalf. Otherwise, upon petition of the petitioner herein a hearing will be set to determine compliance and the reasonableness of attorney fees from contesting these issues.

(R. 16). Beardsley now appeals the denial of his petition for modification.

### DECISION

Beardsley contends that the trial court erred in denying his petition to modify child support. We disagree.

 We will reverse a decision regarding modification of child support only where it is clearly erroneous. See *Matter of Paternity of Humphrey* (1991), Ind., 583 N.E.2d 133, 134. Typical formulations of the clearly erroneous test declare that a child support order will be affirmed unless it is clearly against the logic and effect of the facts and circumstances that were before the trial court. *Truman v. Truman* (1994), Ind.App., 642 N.E.2d 230, 236. Child support awards may be modified only:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Ind.Code 31–1–11.5–17(a)(1) and (2). *See also* Ind.Child Support Guideline 4. The petitioning party bears the burden of proving the necessary change of circumstances to justify modification. *Dorgan v. Dorgan* (1991), Ind.App., 571 N.E.2d 325, 326.

We start our review with the observation that the Indiana Supreme Court adopted the Child Support Guidelines for use "in all matters of child support" made after October 1, 1989. Commentary, Ind.Child Support Guideline 1. *See also Boruff v. Boruff* (1992), Ind.App., 602 N.E.2d 180 (Guidelines are to be used in the context of a petition to determine or to modify support.) The court updated the guidelines effective March 1, 1993. Pursuant to the Guidelines, child support orders are based upon the weekly gross income of both parties—which is required to be reported on a Child Support Guidelines worksheet. Ind.Child Support Guideline 3(B)(1) states:

A copy of the worksheet which accompanies these Guidelines *shall* be completed and filed with the court in each case in which the court is asked to order support, including cases in which agreed orders are submitted, and worksheets *shall* be signed

---

**1.** Beardsley testified that, in 1992, Heazlitt "incurred a need to refinance her house and could not do so unless she paid off that mortgage." (R. 22). The mortgage to which Beardsley refers appears to be the second mortgage on the home where Heazlitt and the children were living. To accommodate Heazlitt's need to refinance her house, the parties agreed that: 1) Heazlitt would release Beardsley from his obligation to pay the second mortgage on the house, and 2) Beardsley's child support would be increased by $50.00 per week for two years.

by both parties, not their counsel, under penalties of perjury.

(Emphasis added).

■ Here, Beardsley, who had the burden of proving the necessary change in circumstances to justify a child support modification, failed to comply with the Guidelines and submit a completed, verified and signed worksheet.[2] In *Cobb v. Cobb* (1992), Ind. App., 588 N.E.2d 571, 575, we held that it is error for a trial court to base its support order on an unverified and unsigned worksheet. Based on *Cobb,* the trial court in this case would have erred if it had modified Beardsley's child support accordingly.

■ Further, the worksheet requirement is particularly important where, as here, the petitioner is self-employed. Ind.Child Support Guideline 3(A)(2) provides:

*Weekly Gross Income from self-employment, operation of a business, rent and royalties is defined as gross receipts minus ordinary and necessary expenses.* In general, these types of income and expenses from self-employment or operation of a business should be carefully reviewed in order that the deductions be restricted to reasonable out-of-pocket expenditures necessary for the production of income. These expenditures may include a reasonable yearly deduction for necessary capital expenditures. *Weekly gross income from self-employment may differ from a determination of business income for tax purposes.*[3]

(Emphasis added). As noted by our Supreme Court in *McGinley–Ellis v. Ellis* (1994), Ind., 638 N.E.2d 1249, 1252, "[t]his approach was adopted in recognition of the fact that the self-employed and those in analogous situations often have an ability to control the structure and amount of their own compensation. As a result, determining the profitability of the venture or operation paints a better picture of the spouse's financial wherewithal than would a mere toting up of any formal compensation or in-kind benefits." In addition, Ind.Child Support Guideline 3(B)(2) provides:

Income statements of the parents shall be verified with documentation of both current and past income. Suitable documentation of current earnings includes pay-stubs, employer statements, or *receipts and expenses if self-employed.* Documentation of income may be *supplemented* with copies of tax returns.

(Emphasis added).

Here, Beardsley, an attorney, is the sole shareholder and officer of Stephen J. Beardsley, P.C. Further, Beardsley is the general partner of a limited partnership known as Historic Properties, Inc., which owns the building that houses his 4000 square foot law office, his 4000 square foot home, and his current wife's business. Although Beardsley submitted his 1992 and 1993 tax forms to the trial court, he failed to submit business receipts and expenses. In addition, Beardsley testified that he does not pay himself a salary. Rather, Beardsley's income is in the form of dividends from his professional corporation. Beardsley further testified that: 1) he pays himself dividends on the advice of his accountant so that he does not have to

---

**2.** Beardsley submitted a typed document which listed his 1993 gross income as $34,853. The document was neither signed nor verified. (R. 203).

**3.** The Commentary to Ind.Child Support Guideline 3 further provides:

In calculating weekly gross income, it is helpful to begin with total income from all sources. This figure may not be the same as gross income for tax purposes.... Calculating weekly gross income for the self-employed or for those who receive rent and royalty presents unique problems and calls for careful review of expenses.

The principle involved is that actual expenses are deducted and benefits that reduce living expenses (company cars, free lodging, reimbursed meals, etc.) should be included in whole or in part. It is intended that actual out-of-pocket expenditures for the self-employed, to the extent that they are reasonable and necessary for the production of income may be deducted. Reasonable deductions for capital expenditures may be included. While income tax returns may be helpful in arriving at weekly gross income for a self-employed person, the deductions allowed by the Guidelines may differ significantly from those allowed for tax purposes.

pay self-employment tax, and 2) he determines when he will issue himself a dividend.[4]

◼ Beardsley failed to supply the trial court with a child support guidelines worksheet. Further, he failed to present the proper documentation and evidence to prove the necessary change of circumstances to justify a child support modification. This court will neither reweigh the evidence nor judge the credibility of witnesses. The trial court did not err in denying Beardsley's petition to modify.

Beardsley further argues that the trial court erred "in leaving [him] One Hundred percent (100%) responsible for the payment of all college expenses of the children." Beardsley's Brief, p. 7. Specifically, Beardsley argues that the trial court "violated the commentary in the Child Support Guidelines requiring educational expenses to be apportioned among the parents according to their resources."[5] Beardsley's Brief, p. 7. We disagree.

Ind.Code 31–1–11.5–12(b)(1) authorizes the trial court to award post-secondary expenses. Commentary, Child Supp.G. 3(E). Factors for the court to consider include:

1) The financial resources of the custodial parent;

2) The standard of living the child would have enjoyed had the marriage not been dissolved....

3) The physical or mental condition of the child and the child's educational needs; and

4) The financial resources and needs of the noncustodial parent.

I.C. 31–1–11.5–12(a)(1–4). The Child Support Guidelines further direct trial courts to "consider the ability of each parent to contribute and the student's ability to provide a portion of the expense," and to apportion the "parents share of educational expenses ... according to their resources." Commentary, Child Supp.G. 3(E).

◼ Here, Beardsley, who had the burden of proving the necessary change of circumstances to justify a modification, failed to provide the required documentation of his income to permit the trial court to determine his ability to contribute to his children's postsecondary education and to apportion his share of educational expenses based upon his resources. Further, the original dissolution decree ordered Beardsley to pay "tuition, books, fees and board in a state supported college or university located in the state of Indiana." (R. 3). Heazlitt testified that it was Beardsley's decision to educate the children at eastern schools,[6] and that she had given no input. According to Heazlitt, she was not advised where the children would be attending college until the decision had already been made. Accordingly, we cannot say that the trial court erred in failing to modify Beardsley's previously determined obligation to pay for his children's post-secondary educations.

◼ Beardsley further argues that the trial court was "required to make a written finding articulating the factual circumstances supporting its denial" because "when the court denied his petition it deviated substantially from the application of the child support guidelines." Beardsley's Brief, p. 6. We agree with Beardsley's general legal contention that a trial court is required to articulate its reasons when its child support order deviates from the result which would have been reached under the guidelines. *See In the Marriage of Brown* (1993), Ind.App., 609 N.E.2d 1173, 1175. However, Beardsley's contention does not apply in this case. Because Beardsley submitted neither a child support guidelines worksheet nor evidence upon which the trial court could have determined his income, we are unable to determine whether the trial court deviated from the application of the child support guidelines when it denied Beardsley's petition to modi-

---

4. When asked how his dividend income was paid throughout the year, Beardsley responded as follows:

Oh, no regular basis, when there's a surplus in the checkbook, it gets paid for my personal (INAUDIBLE).
(R. 68).

5. At the time of the hearing, Elisabeth had completed two years of college, and Elisha was ready to begin his first year of college.

6. Elisabeth attends Boston University, and, at the time of Beardsley's petition, Elisha was planning to attend Johnson State College in Vermont.

fy. The trial court did not err in failing to make written findings of fact.

Lastly, Beardsley argues that the trial court "failed to resolve a conflict between the existing orders of child support from the court." Beardsley's Brief, p. 9. Specifically, Beardsley argues that although the 1988 dissolution decree provided for a pro-rata deduction in Beardsley's weekly child support obligation when each child entered college, the 1992 child support order did not provide for any such reduction. Rather, the 1992 order obligated Beardsley to pay $190.00 per week during the school year and $150.00 per week during the summer until further order of the court. According to Beardsley, the "court's denial of the petition failed to resolve this conflict in the orders and since 1994, when Elisha moved out of [Heazlitt's] house to attend college, it is unknown whether the pro-rata deduction in child support applies or whether the $190.00 per week child support for the three (3) children continues in effect." Beardsley's Brief, p. 9.

We fail to see a conflict in the 1988 order and 1992 order. The 1988 order clearly states that child support payments are reduced by one fourth with respect to any child attending college. The 1992 Agreed Order of Modification, which Beardsley prepared, clearly states that it modifies "*some* of the existing provisions of the [dissolution] decree." (Emphasis added). (R. 11). Further, the 1992 modification was designed to accommodate Heazlitt's need to refinance her home. In addition, Heazlitt testified that she believed that her child support would automatically be reduced by over $3,000.00 when Elisha started college. Heazlitt did not identify a conflict in the orders, and she fully expected that Beardsley's obligation would be reduced pursuant to the dissolution decree. The trial court did not err in failing to resolve a conflict between the existing orders of child support because no conflict existed.

Affirmed.

CHEZEM and ROBERTSON, JJ., concur.